IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

MICHAEL THOMAS; DEBORAH LEE       )     CIVIL 14-00176 LEK-KJM
THORPE, Personal                 )
Representative of the Estate     )
of Blake Snyder, Deceased;       )
DEBORAH LEE THORPE,              )
Individually,                    )
                                 )
          Plaintiff,             )
                                 )
     vs.                         )
                                 )
THE ALCOHOLIC REHABILITATION     )
SERVICES OF HAWAII, INC.,        )
                                 )
          Defendant.             )
_____  )

**ORDER GRANTING: (1) DEFENDANT'S MOTION FOR SUMMARY JUDGMENT RE:
PLAINTIFF DEBORAH LEE THORPE, PERSONAL REPRESENTATIVE OF THE
ESTATE OF BLAKE SNYDER, DECEASED AND DEBORAH LEE THORPE,
INDIVIDUALLY; AND (2) DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT RE: PLAINTIFF MICHAEL THOMAS**

On August 24, 2015, Defendant Alcoholic Rehabilitation

Services of Hawaii, Inc. ("Defendant") filed its:  Motion for

Summary Judgment Re: Plaintiff Deborah Lee Thorpe, Personal

Representative of the Estate of Blake Snyder, Deceased and

Deborah Lee Thorpe, Individually ("Thorpe Motion"); and Motion

for Summary Judgment Re: Plaintiff Michael Thomas ("Thomas

Motion," collectively "Summary Judgment Motions").  [Dkt. nos.

60, 62.]  On March 22, 2016, pro se Plaintiff Deborah Lee Thorpe,

personal representative of the Estate of Blake Snyder ("Snyder"),

deceased, and Deborah Lee Thorpe, individually ("Thorpe"), and

Plaintiff Michael Thomas ("Thomas," collectively "Plaintiffs")

filed a joint memorandum in opposition.[1]  [Dkt. no. 123.]  On March 29, 2016, Defendant filed two separate replies to the memorandum in opposition, one in support of the Thorpe Motion and the other in support of the Thomas Motion.  [Dkt. nos. 125, 126.]

In an entering order filed on March 1, 2016 ("3/1/16 EO"), the Court found these matters suitable for disposition without a hearing, pursuant to Rule 7.2(d) of the Local Rules of Practice of the United States District Court for the District of Hawai`i ("Local Rules").[2]  [Dkt. no. 119.]  After careful consideration of the Summary Judgment Motions, supporting and opposing memoranda, and the relevant legal authority, Defendant's Summary Judgment Motions are HEREBY GRANTED for the reasons set forth below.

---

[1] On March 28, 2016, Plaintiffs filed an errata to their memorandum in opposition, which consists of pages that Plaintiffs inadvertently failed to submit to the Court ("Memorandum in Opposition Errata").  [Dkt. no. 127.]  Plaintiffs also provided the Court with a second courtesy copy.  [Dkt. no. 129.]  The Memorandum in Opposition Errata uses page numbers that correspond to the missing pages in the memorandum in opposition, and the Court will refer to these page numbers.

[2] On October 8, 2015, and in lieu of a memorandum in opposition to the Summary Judgment Motions, Plaintiffs filed a request for a Fed. R. Civ. P. 56(d) continuance.  [Dkt. no. 72.] The Court reserved ruling on the Summary Judgment Motions pending the outcome of two discovery-related motions that were set for hearing before the magistrate judge.  Once there was a final resolution of the discovery-related motions, the Court denied Plaintiffs' Rule 56(d) request and set a new briefing schedule for the Summary Judgment Motions.  [3/1/16 EO at 2.]

## BACKGROUND

The background of this case is well known to the parties, and the Court will only repeat what is relevant to the Summary Judgment Motions.  Defendant operates Hina Mauka, a substance abuse treatment facility in Kaneohe, Hawai`i.  [Def.'s Concise Statement of Facts in Supp. of Thorpe Motion ("Def.'s CSOF in Supp. of Thorpe Motion"), filed 8/24/15 (dkt. no. 61), Aff. of Alan Johnson ("Johnson Aff.") at ¶ 1.[3]]  Thorpe states that she is Snyder's mother and the personal representative of Snyder's estate.  [Notice of Removal, filed 4/15/14 (dkt. no. 1), Exh. A ("First Amended Complaint") at ¶ 2.I.]  Thomas states that he is a family friend who, during the relevant time period, was assisting Snyder with starting a business and providing him shelter.  [Id. at ¶¶ 7-9.]  In 2012, Thorpe attempted to get Snyder admitted to Hina Mauka.  [Def.'s CSOF in Supp. of Thorpe Motion, Decl. of Gregory K. Markham ("Markham Decl. in Supp. of Thorpe Motion"), Exh. 1 (Def.'s Response to Pltf.'s First Request for Production of Documents) ("Def.'s First Production of Documents") at 16-21 (Hina Mauka Intake/Referral Communication Flow Sheet with notes from Souza).[4]]  According to Plaintiffs,

---

[3] Alan Johnson is President and Chief Executive Officer of Alcoholic Rehabilitation Services of Hawai`i, Inc.  [Johnson Aff. at ¶ 1.]

[4] Defendant's First Production of Documents is not consecutively paginated, and the page numbers referenced here are
(continued...)

Snyder was also working with a case manager from APS Healthcare named Elizabeth Gonzalez ("Gonzalez") "who acted as a liaison between Hina Mauka and [Snyder]." [First Amended Complaint at ¶ 13.]  Plaintiffs contend that, on February 20, 2012, after Gonzalez "called [Thorpe] to report that Hina Mauka had an open bed," Hina Mauka Admission Supervisor Mahikulani Souza ("Souza") called Snyder.  [Id.]  On February 21, 2012, Snyder signed a release form that allowed Hina Mauka to request his medical records, including information regarding any psychiatric condition.  [Def.'s First Production of Documents at 42 (Hina Mauka's Consent to Release/Obtain Confidential Information, signed by Snyder).[5]]

Souza and Snyder's final telephone conversation took place on March 28, 2012 ("3/28/12 Call").  [Def.'s First Production of Documents at 19.]  Thomas states that he was with Snyder during the 3/28/12 Call.  [First Amended Complaint at ¶¶ 20-21.]  Plaintiffs allege, *inter alia*, that:  Snyder was unable to participate in the 3/28/12 Call because he was not

_____

[4](...continued)
those assigned by this district court's electronic case filing system.

[5] Defendant's First Production of Documents was also submitted in support of the Thomas Motion.  See Def.'s Concise Statement of Facts in Supp. of Thomas Motion ("Def.'s CSOF in Supp. of Thomas Motion"), filed 8/24/15 (dkt. no. 63), Decl. of Gregory K. Markham ("Markham Decl. in Supp. of Thomas Motion"), Exh. 1.

feeling well and did not communicate well on the phone; Souza asked Thomas many questions about Snyder's medical history and substance use, even after being informed that Thomas was not Snyder's guardian; and, after the 3/28/12 Call, Souza called Gonzalez and informed her that Snyder would not be admitted to Hina Mauka because Thomas "coached" him during the phone call. [Id. at ¶¶ 24-31.]  Further, Plaintiffs argue that Snyder was not admitted to Hina Mauka "on account of his disabilities," and that Souza's position that Thomas coached Snyder is pretextual.  [Id. at ¶ 33.]

Plaintiffs state that, after the 3/28/12 Call, Thomas called Hina Mauka to speak with Souza about Snyder.  Plaintiffs also state that Thomas called Hina Mauka Human Resources Director Cyndi Unga, who assured him that the decision regarding Snyder's admission to Hina Mauka was not because he was "coached" on the 3/28/12 Call.  [Id. at ¶¶ 34-37.]  According to Plaintiffs, however, Souza "published repeated statements" that Snyder was not admitted to Hina Mauka because of Thomas's "coaching."  [Id. at ¶ 42.]

Plaintiffs submit that Snyder became severely depressed after finding out that he would not be admitted to Hina Mauka, and Snyder unfortunately passed away on May 6, 2012.  [Id. at ¶¶ 8, 39, 44.]  Plaintiffs state that Thorpe blamed Thomas for the fact that Snyder was not admitted to Hina Mauka.  [Id. at

¶ 45.]   As a result, according to Plaintiffs:  Thomas's relationship with Snyder's family was "destroyed"; he had to seek professional help; and he was diagnosed with post-traumatic stress disorder.  [Id. at ¶ 50.]

Plaintiffs bring claims for:  violation of § 504 of the Rehabilitation Act of 1973 ("§ 504"), 29 U.S.C. § 794 ("Count I"); [id. at ¶¶ 53-56;] intentional infliction of emotional distress ("IIED" and "Count III"); [id. at ¶¶ 65-67;] and punitive damages ("Count IV") [id. at ¶¶ 68-70].  In addition, Thomas brings a claim for slander ("Count II").  [Id. at ¶¶ 57-64.] Plaintiffs seek special, general, and punitive damages, as well as "other and further relief as the court may deem just and proper," including attorneys' fees and costs.  [Id. at Prayer for Relief ¶¶ a-d.]

The Thorpe Motion moves for summary judgment on all of the claims brought by Thorpe as personal representative of Snyder's estate, and Thorpe in her individual capacity.  [Thorpe Motion at 2.]  The Thomas Motion moves for summary judgment on all claims brought by Thomas.  [Thomas Motion at 2.]

## DISCUSSION

Plaintiffs are proceeding pro se, and the Court must liberally construe their filings.  See, e.g., Pregana v. CitiMortgage, Inc., Civil No. 14-00226 DKW-KSC, 2015 WL 1966671, at *2 (D. Hawai`i Apr. 30, 2015) ("The Court liberally construes

6

the [plaintiffs'] filings because they are proceeding pro se."

(citing <u>Eldridge v. Block</u>, 832 F.2d 1132, 1137 (9th Cir. 1987))).

## I.   Count I – § 504

Defendant argues that Count I fails as a matter of law.
[Mem. in Supp. of Thorpe Motion at 5-7; Mem. in Supp. of Thomas
Motion at 5-7.]  Plaintiffs argue that there is a genuine issue
of material fact regarding Defendant's refusal to admit Snyder to
Hina Mauka because:  "[i]t can be inferred from [Souza's] conduct
that Defendant knew its practices and treatment of Plaintiffs
could violate the federal requirement to properly accommodate
[Snyder]"; Defendant did not "exercise due diligence" during the
intake process, including Defendant's refusal to allow Thomas to
bring Snyder to Hina Mauka for an in-person interview; there were
beds available for Snyder at Hina Mauka; and Defendant knew that
Snyder was diagnosed with schizophrenia.  [Mem. in Opp. at 9-10.]

Section 504 states, in pertinent part:

**(a)  Promulgation of rules and regulations**

No otherwise qualified individual with a
disability in the United States, as defined in
section 705(20)[6] of this title, shall, solely by
reason of her or his disability, be excluded from
the participation in, be denied the benefits of,
or be subjected to discrimination under any
program or activity receiving Federal financial

---

[6] Section 705(20) states, in relevant part, that an
"individual with a disability" is anyone with "a physical or
mental impairment which for such individual constitutes or
results in a substantial impediment to employment."
29 U.S.C. § 705(2)(A)(i).

assistance or under any program or activity
conducted by any Executive agency or by the United
States Postal Service. . . .

(b)  "Program or activity" defined

. . . .

> **(3)(A)** an entire corporation, partnership, or
> other private organization, or an entire sole
> proprietorship –
>
>> **(i)** if assistance is extended to such
>> corporation, partnership, private
>> organization, or sole proprietorship as
>> a whole; or
>>
>> **(ii)** which is principally engaged in the
>> business of providing education, health
>> care, housing, social services, or parks
>> and recreation[.]

29 U.S.C. § 794.

This district court has stated:

> Section 504 of the Rehabilitation Act
> prohibits discrimination against an individual
> solely by reason of his or her disability by
> entities who receive federal funding, including
> private organizations.  29 U.S.C. § 794(b)(3).
> Section 504, like the [Americans with Disabilities
> Act ("ADA")], ensures that disabled individuals
> are not denied benefits or participation in
> programs "solely by reasons of her or his
> disability."  29 U.S.C. § 794(a).  Put another
> way, Section 504 seeks to ensure that disabled
> individuals receive the same treatment as those
> who are not disabled.  <u>Chandler v. City of Dallas</u>,
> 2 F.3d 1385, 1389-90 (5th Cir. 1993).

> A *prima facie* claim under Section 504 of the
> Rehabilitation Act requires a plaintiff to allege
> the following four elements:  (1) that he is a
> handicapped individual under the Act; (2) that he
> is "otherwise qualified" for the benefit sought;
> (3) that he was discriminated against solely by
> reason of his handicap; and (4) that the program

8

or activity in question receives federal financial assistance.  Dempsey v. Ladd, 840 F.2d 638, 640 (9th Cir. 1987).

DiCrescenzo v. UnitedHealth Grp., Inc., CIVIL NO. 15-00021 DKW-RLP, 2015 WL 5472926, at *7 (D. Hawai`i Sept. 16, 2015).  Here, for purposes of the Summary Judgment Motions, Defendant does not dispute that Snyder was disabled under § 504, see Mem. in Supp. of Thorpe Motion at 6; Mem. in Supp. of Thomas Motion at 6, and that Defendant received federal funding during the relevant time period, see Johnson Aff. at ¶ 3 ("Hina Mauka received federal funding in March 2012.").

It is clear from the record, however, that Defendant's decision was based on concern that Hina Mauka's program was not appropriate for Plaintiff, and not based solely on Snyder's disability.  Specifically, on March 21, 2012, Souza noted that: Snyder has "limited verbal understanding"; "his comprehension [and] recall is limited"; and "[Hina Mauka] may be too cognitive/fast paced/intrusive."[7]  [Def.'s First Production of Documents at 17-18.]  Further, Souza's March 28, 2012 notes state that Hina Mauka may use groups that are "too large" for Snyder.[8]

_____

[7] The Court questions neither Snyder's intelligence nor his ability to communicate, but notes that the First Amended Complaint appears to support Souza's observations.  See First Amended Complaint at ¶ 46 ("Given Blake's specific disability, Blake was not loquacious or overtly verbal, but Blake could communicate.").

[8] A psychiatric evaluation performed on February 29, 2012, (continued...)

9

[Id. at 19.]  Because of this, Souza planned to refer Snyder to a different program.  See id. at 18 ("Poailani - options for his [treatment] there"), 19 ("Plan:  Refer to Poailani").[9]

        The record also shows that Defendant did not deny Snyder services.  See, e.g, Def.'s First Production of Documents at 20 (Souza's notes, which state "[t]his is **not** a denial of [services] but a recommendation to a more appropriate dual diagnosis facility." (emphasis in original)); Def.'s First Production of Documents at 22 (letter from Evon K. Silva, Manager of Adult Clinical Services at Hina Mauka, dated 9/2/12, stating that "[t]here was no denial of services").  Moreover, insofar as Plaintiffs bring Count I based on Defendant's alleged failure to conduct the intake with due diligence, Plaintiffs provide no authority to support this claim, and the Court does not know of any such authority.

        On a motion for summary judgment "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor," Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006), but "the nonmoving party 'must do more than simply show that there is some metaphysical

---

        [8](...continued)
also notes that Snyder had "difficulty communicating."
[Defendant's First Production of Documents at 28 (APS Healthcare Psychiatric Evaluation).]

        [9] Po`ailani is a dual diagnosis treatment center located in Kailua, Hawai`i.

doubt as to the material facts,'" Rodriguez v. Gen. Dynamics Armament & Tech. Prods., Inc., 696 F. Supp. 2d 1163, 1176 (D. Hawai`i 2010) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (footnote omitted)).  It is clear to the Court that Hina Mauka did not violate § 504.[10]  The Court FINDS that there is no question of material fact and CONCLUDES that Defendant is entitled to judgment as a matter of law.[11]  See Fed. R. Civ. P.

---

[10] Further, insofar as Plaintiffs allege that Hina Mauka was required to admit Snyder, see Mem. in Opp. at 9 ("It was thus substantially likely that Blake Snyder's federal right to be properly accommodated pursuant to Section 504 would be impaired."), they are incorrect.  It is axiomatic that § 504 cannot require a substance abuse treatment center to admit every individual that seeks assistance.

[11] The Court questions whether, in their individual capacities, Thorpe and Thomas have standing to bring Count I. Remedies for violations of § 504 are "available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance."  29 U.S.C. § 794a(a)(2).  Other district courts in the Ninth Circuit have found that, "[t]he broad 'any person' language in the enforcement provision indicates Congress' intent to grant standing as broadly as is permitted under Article III."  Cortez v. City of Porterville, 5 F. Supp. 3d 1160, 1166 (E.D. Cal. 2014).  In Cortez, the district court found that a non-disabled plaintiff had standing to bring an associational discrimination claim under § 504, but that "[a] plaintiff must demonstrate that he himself was harmed; that is, that he suffered a specific, separate, and direct injury to himself caused by defendant's actions."  Id. at 1165-66 (citing Glass v. Hillsboro School Dist. 1J, 142 F. Supp. 2d 1286, 1287-88 (D. Or. 2001)); see also Collins v. Dartmouth-Hitchcock Med. Ctr., Civil No. 13-cv-352-JD, 2015 WL 268842, at *8 (D.N.H. Jan. 21, 2015) ("To be actionable, the non-disabled persons themselves must 'establish an injury causally related to, but separate and distinct from, a disabled person's injury under the statute.'" (alteration omitted)
(continued...)

56(a).  Insofar as they seek summary judgment on Count I, the Summary Judgment Motions are GRANTED.

## II.  **Count II – Slander**

Defendant argues that Thomas has not shown that it made a false or defamatory statement, and that "'truth is an absolute defense to defamation.'"  [Mem. in Supp. of Thomas Motion at 9 (emphasis omitted) (quoting <u>Wilson v. Freitas</u>, 121 Hawaii 120, 128, 214 P.3d 1110, 1118 (Ct. App. 2009)).]  Further, Defendant contends that, while Thorpe states that she has not spoken with Thomas since she learned of the "coaching" allegations, the record is replete with examples of them speaking, including the fact that they filed the instant case together.  [<u>Id.</u> at 12.]  Plaintiffs argue that "Thomas did encourage [Snyder] to speak and to try to answer Ms. Souza's questions without hanging up . . . .  However, Defendant is attempting to argue that 'encourage' is

---

[11](...continued)
(quoting <u>Loeffler v. Staten Island Univ. Hosp.</u>, 582 F.3d 268, 280 (2d Cir. 2009))).

While Plaintiffs allege that "Defendants' [sic] practices, policies, and procedures and omissions, as described above, have violated the rights of Plaintiffs secured by Section 504 by discriminating against these individuals solely on the basis of disability," [First Amended Complaint at ¶ 56,] Thorpe and Thomas have not pled separate and distinct injuries, nor have they established that, as of March 2012, they personally had a qualifying disabilities under § 504.  Here, the Court has concluded that Defendant did not violate § 504, and Thorpe and Thomas therefore cannot maintain an associational claim.  The Court does not need to reach the § 504 standing issue at this time.

synonymous with 'coach.'  Plaintiffs dispute Defendant's

assertion that Plaintiff Thomas 'coached' [Snyder] by telling

[Snyder] **what** to say." [Mem. in Opp. at 12 (emphasis in

original).]

      "Hawaii views claims for slander and libel under the

defamation rubric." <u>McNally v. Univ. of Haw.</u>, 780 F. Supp. 2d

1037, 1058 (D. Hawai`i 2011) (some citations omitted) (citing

<u>Bauernfiend v. AOAO Kihei Beach Condominiums</u>, 99 Hawai`i 281, 282

n.2, 54 P.3d 452 n.2, 453 (Haw. 2002)).

> In order to sustain a claim for defamation, a
> plaintiff must establish the following four
> elements:
>
> > (a) a false and defamatory statement
> > concerning another;
> >
> > (b) an unprivileged publication to a third
> > party;
> >
> > (c) fault amounting at least to negligence on
> > the part of the publisher [actual malice
> > where the plaintiff is a public figure]; and
> >
> > (d) either actionability of the statement
> > irrespective of special harm or the existence
> > of special harm caused by the publication.

<u>Gold v. Harrison</u>, 88 Hawai`i 94, 100, 962 P.2d 353, 359 (1998)

(alteration in original) (citation omitted).  A defamatory

statement

> ". . . tends to harm the reputation of another as
> to lower him in the estimation of the community or
> deter third persons from associating or dealing
> with him." <u>Fernandes v. Tenbruggencate</u>, 65 Haw.
> 226, 228, 649 P.2d 1144, 1147 (Haw. 1982) (citing
> Restatement (Second) Torts § 559 (1977)).  The

> Fernandes court explained that, "[w]hether a
> communication is defamatory 'depends among other
> factors, upon the temper of the times, the current
> of contemporary public opinion, with the result
> that words, harmless in one age, in one community,
> may be highly damaging to reputation at another
> time or in a different place.'"   Id.

McNally, 780 F. Supp. 2d at 1058-59 (some alterations in

original).  Even if Thomas could prove the other elements of a

defamation claim, Souza's alleged statements regarding Thomas

"coaching" Snyder are not defamatory.[12]  Moreover, while it is

clear that, at least for a time,[13] Thorpe and Thomas had a

_____

[12] As Defendant noted, under Hawai`i law, "truth is an
absolute defense to defamation."  Gonsalves v. Nissan Motor Corp.
in Haw., Ltd., 100 Hawai`i 149, 173, 58 P.3d 1196, 1220 (2002)
(alteration, citation, and internal quotation marks omitted).
Thomas stated that during the 3/28/12 Call:

> [Snyder] seemed to be uncomfortable and he did not
> begin speaking other than to give "yes" or "no"
> answers.  There then began to be long pauses
> during which [Snyder] did not speak at all.  I did
> encourage [Snyder] to continue to speak and to try
> to answers [sic] Ms. Souza's questions, without
> hanging up.

[Markam Decl. in Supp. of Thomas Motion, Exh. 2 (Pltf.'s Response
to Def.'s First Request for Answers to Interrogatories and First
Request for Production of Documents) at 11.]  Moreover,
Plaintiffs state that "[t]he fact that Plaintiff Thomas did
encourage [Snyder] to speak and to try to answer Ms. Souza's
questions without hanging up is not disputed."  [Mem. in Opp. at
12.]  While not necessary to the instant Order, the Court would
likely agree with Souza's assessment that Thomas "coached" Snyder
during the 3/28/12 Call.

[13] Plaintiffs allege that, "[s]ince the time [Snyder] was
not admitted to Hina Mauka on March 28, 2012, [Thorpe] has
refused to talk to Plaintiff Michael Thomas."  [First Amended
Complaint at ¶ 43.]  The veracity of this representation is
(continued...)

strained relationship, a fissure in a personal friendship does not give rise to a cognizable claim for slander.  The Court FINDS that there is no issue of material fact, and CONCLUDES that Defendant is entitled to judgment as a matter of law.  The Thomas Motion, insofar as it seeks summary judgment on Count II, is GRANTED.

## III. <u>Count III - IIED</u>

Defendant argues that it is entitled to summary judgment on Count III because its actions were not "outrageous."  <u>See</u> Mem. in Supp. of Thorpe Motion at 9; Mem. in Supp. of Thomas Motion at 15.  Plaintiffs submit that the Summary Judgment Motions should be denied as to Count III because there is, at the very least, a genuine issue of material fact regarding the "outrageous" nature of, *inter alia*:  (1) Souza allegedly refusing to reschedule the 3/28/12 Call; (2) Souza asking Thomas questions about Snyder; (3) and Defendant's alleged refusal to allow Thomas to bring Snyder to Oahu for an in-person interview at Hina Mauka. [Mem. in Opp. at 15-17, 19; Mem. in Opp. Errata at 18, 20.]

Under Hawai`i law, an IIED claim requires:  "(1) that the act allegedly causing the harm was intentional or reckless,

---

[13](...continued) severely undermined by the fact that Thorpe and Thomas are pursuing the instant lawsuit together and have filed all motions and memoranda jointly, including the memorandum in opposition to the Summary Judgment Motions.  <u>See</u> Mem. in Opp. at 22 (the last page of the memorandum in opposition, which is signed by Thorpe and Thomas).

(2) that the act was outrageous, and (3) that the act caused (4) extreme emotional distress to another." Barber v. Ohana Military Cmtys., LLC, Civil No. 14-00217 HG-KSC, 2014 WL 3529766, at *10 (D. Hawai`i July 15, 2014) (citing Enoka v. AIG Hawaii Ins. Co., Inc., 128 P.3d 850, 872 (Haw. 2006)).  This district court has stated:

> In explaining the type of "outrageous" conduct that gives rise to a claim for intentional infliction of emotional distress, the Hawaii Supreme Court has noted:
>
>> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.  Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
>
> Dunlea v. Dappen, 83 Haw. 28, 38, 924 P.2d 196, 206 (1996).[14]  "The question whether the actions of the alleged tortfeasor are unreasonable or outrageous is for the court in the first instance, although where reasonable people may differ on that question it should be left to the jury." Young v. Allstate Ins. Co., 119 Haw. 403, 429, 198

---

[14] The Court notes that Dunlea was abrogated on other grounds by Hac v. University of Hawai`i, 102 Hawai`i 92, 73 P.3d 46 (2003).

16

P.3d 666, 692 (2008).

Martin v. Ampco Sys. Parking, Civil No. 12-00598 SOM/RLP, 2013 WL 5781311, at *15-16 (D. Hawai`i Oct. 24, 2013), *reconsideration granted*, 2013 WL 6624124 (Dec. 16, 2013).[15] Even drawing all justifiable inferences in favor of Plaintiffs, the claim for IIED is insufficient.  The actions cited here – a telephone call scheduling decision; routine questions about a prospective patient's history – even if improperly directed at a third person;[16] and Hina Mauka's intake process in general – are not outrageous.  The Court FINDS that there is no issue of material

---

[15] The Motion for Reconsideration is not relevant to the instant Summary Judgment Motions.  See Martin, 2013 WL 6624124 at *1 (stating that the Motion for Reconsideration relates to Count VI, which has to do with an allegedly illegal revocation of a work permit).

[16] Plaintiffs repeatedly allude to a violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1320d, *et seq.*  See, e.g., First Amended Complaint at ¶ 28 ("At no time during that telephone conversation did Ms. Souza cut Plaintiff's conversation with her short, i.e. by stating that she may have been more uncomfortable talking with Plaintiff because Plaintiff was not [Snyder's] parent or 'guardian'."); Mem. in Opp. Errata at 18 ("Plaintiff Thomas asserts that at no time during the March 28, 2012[] phone call did Ms. Souza ask Blake Snyder's permission to ask Plaintiff Thomas any questions.").  Insofar as Plaintiffs seek to establish that the 3/28/12 Call violated HIPAA, this claim is not pled in the First Amended Complaint and therefore must be rejected.  Even assuming, *arguendo*, that this claim was properly before the Court, it would have to be dismissed because "HIPAA itself does not provide for a private right of action."  Webb v. Smart Document Sols., LLC, 499 F.3d 1078, 1082 (9th Cir. 2007) (citation omitted); see also Wheeler v. Hilo Med. Ctr., Inc., Civil No. 09-00533 JMS/KSC, 2010 WL 1711993, at *7 (D. Hawai`i Apr. 27, 2010) ("HIPAA does not give rise to a private cause of action." (citations omitted)).

fact, and CONCLUDES that Defendant is entitled to judgment as a matter of law.  The Summary Judgment Motions, insofar as they seek summary judgment on Count III, are HEREBY GRANTED.

## IV. Count IV - Punitive Damages

Finally, Defendant argues that "Plaintiff has failed to establish actual damages sufficient to impose punitive damages." [Mem. in Supp. of Thorpe Motion at 10; Mem. in Supp. of Thomas Motion at 17.]  Plaintiffs argue that they "have established a claim for relief on their slander and IIED claims" and have therefore "established actual damages sufficient to impose punitive damages."  [Mem. in Opp. Errata at 21.]  Count IV is not a cognizable claim because "[a] claim for punitive damages is not an independent tort, but a remedy that is incidental to another cause of action."  Liberty Mut. Ins. Co. v. Sumo-Nan LLC, Civil No. 14-00520 DKW-KSC, 2015 WL 2449480, at *6 (D. Hawai`i May 20, 2015) (some citations omitted) (citing Ross v. Stouffer Hotel Co. (Hawai`i) Ltd., 879 P.2d 1037, 1049 (Haw. 1994)).  The Court therefore FINDS that there is no issue of material fact, and CONCLUDES that Defendant is entitled to judgment as a matter of law.  The Summary Judgment Motions, insofar as they seek summary judgment on Count IV, are GRANTED.

## CONCLUSION

Snyder's death was tragic, and the Court has great sympathy for Thorpe and Thomas.  Yet, even where it may cause a

party sorrow or frustration, the Court must apply the law.  On the basis of the foregoing, the Thorpe Motion and the Thomas Motion, both filed by Defendant on August 24, 2015, are HEREBY GRANTED.  There being no remaining claims, the Court DIRECTS the Clerk's Office to close this case on **May 9, 2016**, unless Plaintiffs file a motion for reconsideration of this Order by **May 6, 2016**.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, April 18, 2016.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**MICHAEL THOMAS, ET AL. VS. THE ALCOHOLIC REHABILITATION SERVICES OF HAWAII, INC.; CIVIL 14-00176 LEK-KJM; ORDER GRANTING: (1) DEFENDANT'S MOTION FOR SUMMARY JUDGMENT RE: PLAINTIFF DEBORAH LEE THORPE, PERSONAL REPRESENTATIVE OF THE ESTATE OF BLAKE SNYDER, DECEASED AND DEBORAH LEE THORPE, INDIVIDUALLY; AND (2) DEFENDANT'S MOTION FOR SUMMARY JUDGMENT RE: PLAINTIFF MICHAEL THOMAS**